E-FILED; Baltimore County Circuit Court
Docket: 7/14/2026 10:50 AM; Submission: 7/14/2026 10:50 AM
Envelope: 27328694

# IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

**DAVIA EDWARDS,**
5514 Piedmont Avenue
Baltimore, MD 21207

on her own behalf and on behalf of all others similarly situated,

Plaintiff,

v.

**MACYS.COM, LLC,**
151 West 34th Street
New York, NY 10001

Serve on:
Maryland Dep't of Assessment and Taxation,
700 East Pratt Street, Suite 2700
Baltimore, MD 21202

**MACY'S RETAIL HOLDINGS, LLC,**
151 West 34th Street
New York, NY 10001

Serve on:
CORPORATE CREATIONS NETWORK INC.
2405 YORK ROAD
SUITE 201-C
LUTHERVILLE-TIMONIUM, MD 21093

**ADVERTEX COMMUNICATIONS, INC.,**
151 West 34th Street
New York, NY 10001

Serve on:
Maryland Dep't of Assessment and Taxation,
700 East Pratt Street, Suite 2700
Baltimore, MD 21202

**MACY'S MERCHANDISING CORP.,**
151 West 34th Street
New York, NY 10001

**JURY TRIAL DEMANDED**

**CLASS ACTION**

Case No. C-03-CV-26-003253

Serve on:
Maryland Dep't of
Assessment and Taxation,
700 East Pratt Street, Suite 2700
Baltimore, MD 21202

Defendants.

## CLASS ACTION COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is a class action against Defendants Macys.com, LLC, Macy's Retail Holdings, LLC, Advertex Communications, Inc., and Macy's Merchandising Corp. (collectively, "Macy's" or "Defendants") for sending materially false, deceptive, and misleading marketing emails to Maryland residents.

2. In its marketing emails, Macy's uses a variety of tricks and deceptive language deliberately designed to influence consumer behavior and to trick Maryland consumers into making impulsive purchases. For example, Macy's uses subject lines to impose fictitious deadlines—both on the availability of its sales and on the window to order merchandise in time for the holidays—inducing customers to purchase items out of fear that they might miss an unusually good deal or their last opportunity to receive an order in time for a holiday.

3. Macy's uses subject lines that falsely claim a sale is available for a single day—using language such as "Today only"—when, in reality, the same or a better discount is offered again just days later. Macy's also uses subject lines falsely claiming that consumers have only "1 day left" to order for holiday delivery or shipping, when, in reality, the deadline to place an order for timely delivery had not yet arrived, and the same ordering opportunity remained available after

the represented deadline. Macy's sends these types of emails in an apparent effort to drive sales by creating a false sense of urgency.

4. The fact that such statements are false and misleading has been recognized by the Federal Trade Commission, which directs that sellers should not "make a 'limited' offer which, in fact, is not limited." 16 C.F.R. § 233.5; *see also Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025) (recognizing that subject lines indicating that a sale is coming to an end, when the sale is not in fact coming to an end, violate Washington's Commercial Electronic Mail Act, Revised Code of Wash., § 19.190.020, *et seq.*).

5. In these and other instances—seemingly limited only by the company's marketing creativity—Macy's is in violation of the Maryland Commercial Electronic Mail Act ("MCEMA"), Maryland Code Annotated, Commercial Law §§ 14-3001 *et seq.*, which prohibits senders of commercial electronic mail from sending emails with materially false or misleading information in the subject line, which has the capacity, tendency, or effect of deceiving the recipient. Each of the emails identified herein (the "Subject Emails"), and others not identified, contains materially false or misleading information, and has the capacity, tendency, or effect of deceiving the recipients as to the true duration of a sale or promotion or the true deadline to order for timely delivery.

6. By sending emails with subject lines containing materially false and misleading information, which has the capacity, tendency, or effect of deceiving the recipients, to Named Plaintiff and members of the Class (defined below), Macy's violates MCEMA.

7. By sending emails with materially false and misleading information in the subject lines, Macy's intends to trick and deceive the recipients into thinking that a sale is imminently coming to an end, or that their time to order for timely delivery is about to expire, when in reality,

and by design, Macy's always knew that the sale was not actually coming to an imminent end and that the ordering opportunity would remain available.

8. Named Plaintiff brings this action as a class action on behalf of persons residing in Maryland, to whom Macy's sent emails with materially false and/or misleading information in the subject lines. Named Plaintiff's requested relief includes an award to Named Plaintiff and Class members of statutory damages for each illegal email, and an award of attorneys' fees and costs.

## II. JURISDICTION

9. The Circuit Court of Maryland has jurisdiction over this case under *Md. Code Ann., Cts. & Jud. Proc.* § 1-501.

10. The Circuit Court of Maryland has personal jurisdiction over Defendants pursuant to *Md. Code Ann., Cts. & Jud. Proc.* § 6-103(1)–(3), as Defendants systematically and continually transact business in Maryland, operate Macy's department stores located in the State of Maryland, the case arises, in part, out of transactions that took place within Maryland, and Defendants contract to supply goods or services in Maryland.

## III. PARTIES

11. Named Plaintiff Davia Edwards is a natural person currently residing at 5514 Piedmont Avenue, Baltimore, MD 21207.

12. Defendant Macys.com, LLC is a limited liability company doing business within this State, with its principal place of business located at 151 West 34th Street, New York, NY 10001. Macys.com, LLC operates Macy's e-commerce website, markets Macy's products, and initiates or assists in the transmission of Macy's marketing emails.

13. Defendant Macy's Retail Holdings, LLC is a limited liability company doing business within this State, with its principal place of business located at 151 West 34th Street, New York, NY 10001. Macy's Retail Holdings, LLC is a subsidiary of Macy's, Inc. and employs individuals with oversight responsibilities for Macy's email marketing efforts.

14. Defendant Advertex Communications, Inc. is a corporation that provides advertising and email-marketing services to Macy's, with its principal place of business located at 151 West 34th Street, New York, NY 10001. Advertex Communications, Inc. initiates or assists in the transmission of Macy's marketing emails.

15. Defendant Macy's Merchandising Corp. is a corporation doing business within this State, with its principal place of business located at 151 West 34th Street, New York, NY 10001. Macy's Merchandising Corp. is a subsidiary of Macy's, Inc. and participates in the marketing and promotion of Macy's products, including through the marketing emails at issue.

16. Each Defendant is a subsidiary of, affiliate of, or vendor to Macy's, Inc., and each initiated, conspired to initiate, or assisted in the transmission of the Subject Emails to Named Plaintiff and members of the Class.

## IV. FACTUAL ALLEGATIONS

### A. MCEMA prohibits initiating or conspiring to initiate the transmission of commercial e-mails with materially false or misleading information in the subject lines.

17. MCEMA, by its terms, regulates materially false and deceptive email marketing.

18. MCEMA was enacted to protect consumers' interests in being free from deceptive commercial e-mails.

19. An injury occurs under MCEMA any time a commercial e-mail is transmitted that contains materially false or misleading information in the subject line, which has the capacity, tendency, or effect of deceiving the recipient.

20. Under MCEMA, it is irrelevant whether misleading commercial e-mails were solicited.

21. MCEMA creates an independent, limited, private right of action, which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient. MCEMA § 14-3003. Each of the subject lines identified herein had the capacity, tendency, or effect of deceiving Named Plaintiff and members of the Class into thinking that a sale was ending on a particular date, or that their time to order for timely delivery was about to expire, when in reality neither was true.

22. A violation of MCEMA creates a standalone cause of action.

**B. Macy's initiated (or conspired to initiate) the transmission of commercial e-mails with materially false or misleading information in the subject lines.**

23. Macy's has initiated (or conspired to initiate) the transmission of many commercial electronic mail messages with materially false or misleading information in the subject lines to Named Plaintiff and members of the Class.

24. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from Macy's also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

25. Macy's sent the emails for the purpose of promoting its goods for sale.

26. The emails were sent at Macy's direction and were approved by Macy's.

27. Macy's violates MCEMA because many of the statements in the email subject lines are materially false and misleading on several fronts. There are numerous examples of Macy's emails that can be shown to have false and misleading information in the subject lines just by reviewing the subject lines and contents of other Macy's emails.

28. Macy's sent Named Plaintiff the following Subject Emails, among others:

a. On December 20, 2025, at 1:04 p.m., Macy's sent Named Plaintiff an email with the subject line: "1 day left for holiday delivery! 🎁" Later that same day, at 3:56 p.m., Macy's sent Named Plaintiff a second email with the subject line: "Top 100 toys! 1 day left for shipping," the preheader of which stated "Last chance to shop great gifts for under the tree." The information in the subject lines of these December 20, 2025 emails—stating that there was only "1 day left" to order for holiday delivery and shipping—was false and misleading. In reality, and by design, the deadline to order merchandise for delivery in time for the holidays had not passed on December 21, 2025; Macy's continued to offer ordering options (including expedited shipping, same-day delivery, and buy-online-pick-up-in-store) that permitted delivery in time for the holidays after December 21, 2025. Indeed, the two emails, sent approximately three hours apart on the very same day and each claiming that only "1 day" remained, are internally inconsistent and confirm that the represented deadline was arbitrary and false. The information in the subject lines of these Subject Emails had the capacity, tendency, or effect of deceiving the recipient into thinking that her time to order for timely holiday delivery was imminently coming to an end.

b. On January 29, 2026, at 7:45 a.m., Macy's sent Named Plaintiff an email with the subject line: "Today only: Up to 65% off men's designer suits, active & more." The information in the subject line—representing that the advertised discount was available "Today only"—was false and misleading. In reality, and by design, the same or a better discount on men's suits and related merchandise was offered again just days later, including on or about February 3, 2026. The information in the subject line of this Subject Email therefore had the capacity, tendency, or effect of deceiving the recipient into thinking that the advertised sale was available for a single day only, when it was not.

29. The clear purpose of using representations indicating that a sale, or the opportunity to order for timely delivery, is coming to an imminent end is to grab the recipient's attention and induce them into immediate action to secure savings or delivery that will purportedly not be available beyond a specific window of time.

30. Research indicates that limited-time discounts and deadlines create a sense of urgency that changes consumer decision making, including by persuading customers to purchase more or different items than they otherwise would, or forego comparison shopping.

31. Macy's deliberately designs the subject lines of its marketing emails to tap into consumer urges to take advantage of a sale, or an ordering deadline, before it's gone.

32. The information in subject lines of the Subject Emails has the capacity, tendency, or effect of deceiving consumers into believing that it is their last chance to obtain the promotion or to order for timely delivery, or that the promotion or ordering deadline ends on a specific date or at a specific time, when in every instance identified herein, it does not end on the date or time specified in the subject line.

33. Macy's likely would not use this marketing tactic, or at least would use it less frequently, if it were not successful in generating sales. Macy's frequent use of this tactic suggests discovery will show that Macy's has conducted A/B testing of these email subject lines and determined that this tactic increases sales, which in turn, will show that representations of fact in an email subject line regarding the expiration or extension of limited-time promotions and delivery deadlines are among the type of facts Maryland "residents would depend on in making their consumer decisions." *Brown*, 567 P.3d 38.

34. The FTC has recognized that a common method of "manipulat[ing] consumer choice by inducing false beliefs" is creating a false sense of urgency that a consumer's time to act is limited. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; see also U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

35. Macy's sent the Subject Emails in an apparent effort to drive sales by creating a false sense of urgency.

36. The FTC has stated that such "False Limited Time Message[s]" create "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light* at 22.

37. These types of "False Limited Time Message[s]" are psychologically effective, and there is "considerable evidence" that, generally speaking, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture* at 26.

38. The purpose of putting this perceived time pressure on consumers is to attempt to induce consumers to make hasty and impulsive purchases by "rely[ing] on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." Id.

39. When confronted with this time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

40. False time scarcity claims thus have the capacity to deceive consumers by making them think that they have to act now, or they'll miss the opportunity to get the deal or the delivery. In fact, studies also show that these types of false urgency emails do, in fact, prompt recipients into making impulsive purchases. See, e.g., U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

41. False time scarcity claims are a consistent theme in Macy's email marketing tactics, and Macy's uses these tactics in an attempt to induce customers to purchase its products based on fear of missing a good deal or a delivery deadline, and not genuine desire to purchase the products.

42. Macy's, as set forth herein, has sent many emails using these tactics, and in each instance, the purpose of placing these fictional time limits on its deals and delivery deadlines was to attempt to induce the recipient into making a purchase now, preying on their fear of missing the deal. And thus, the information contained within the subject lines of the emails set forth herein was materially false and misleading, and had the capacity, tendency, or effect of deceiving the recipient as to the true duration of the sale or the true ordering deadline, in violation of MCEMA.

43. In each instance identified herein, the subject line conveys an objective statement of fact that is materially (and objectively) false or misleading and that Maryland residents would

depend on in making consumer purchasing decisions. Discovery will show additional emails Macy's sent to Named Plaintiff and the Class.

44. Macy's knowingly misrepresented the duration of its sales and the deadlines to order for timely delivery, and Macy's intended that the recipients rely on its misrepresentations.

45. Each of the misrepresentations in the subject lines of the Subject Emails was objectively materially false or materially misleading, in the sense that a significant number of unsophisticated consumers in Maryland would attach importance to the information in the subject lines in determining a choice of action. See, e.g., *Golt v. Phillips*, 308 Md. 1, 10, 517 A.2d 328 (1986); see also *Brown*, 567 P.3d at 47 (2025) (finding that "representations of fact [in email subject lines]—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts" are statements that consumers "would depend on in making their consumer decisions") (emphasis added).

46. Named Plaintiff received and read the subject lines of each of the Subject Emails at or around the time the Subject Emails were sent.

**C. Macy's false time-scarcity emails are part of a longstanding, widespread, and well-documented pattern.**

47. The Subject Emails Macy's sent to Named Plaintiff are not isolated. They are examples of a pervasive, preconceived marketing strategy in which Macy's uses email subject lines to impose false deadlines on its sales and promotions. The following additional examples—drawn from Macy's own commercial emails and alleged on information and belief—further illustrate that pattern and confirm that the information in the subject lines of the Subject Emails was materially false and misleading.

48. On February 13, 2024, Macy's sent an email with the subject line "Open ASAP: up to 65% off ends tomorrow," which communicated discounts on items in its home department. As demonstrated by an email sent on February 17, 2024, with the subject line "Here, but not for long: 10-65% off all things home + Bonus Days!," the call to urgency on February 13 was misleading, because the reduced pricing was offered once again only four days later. Then, less than two weeks later, on February 28, 2024, Macy's sent another email informing recipients that comparable reductions were available, though buyers would have only hours to act: "Hours left for 30-60% off *the best* home deals."

49. On November 10, 2024, Macy's sent an email with the subject line "Last chance! 40-60% off disappears tonight *poof*," suggesting that November 10 was the final opportunity to receive the advertised discounts. But it was not the "last chance" for such savings. On November 14, 2024, mere days later, Macy's sent another email with the subject line "Black Friday deals are here!," advertising additional reductions, some of which exceeded 60%.

50. On November 13, 2024, Macy's sent an email with the subject line "Today only! Save on Nike, Crocs & more during our Parade of Deals," offering children's Nike merchandise at 25% off. But it was not a "Today only" deal. Just three days later, on November 16, 2024, Macy's sent an email with the subject line "25-40% off Nike, Reebok and more," again offering children's activewear at 25% off.

51. On December 15, 2024, Macy's sent an email with the subject line "Ends in hours! 40% off dresses & more." Three days later, on December 18, 2024, Macy's again invoked urgency—for an even better deal on dresses—in an email titled "Final hours! 50-60% off dresses, suits & more party looks." And two days after that, on December 20, 2024, Macy's was still

offering dresses at reduced pricing, as confirmed by an email with the subject line "Right now: 40% off dresses, online only."

52. On January 30, 2025, Macy's sent an email with the subject line "Today only: 50-65% off men's suits & more during our Flash Sale." Yet, on February 5, 2025, Macy's sent another email indicating that men's suits were again offered at a discounted rate—in some cases, a better one—stating in the subject line: "Flash Sale 50-70% off men's suits, shoes & more, today only!"

53. On February 17, 2025, Macy's sent an email with the subject line "Ends tonight! Up to 70% off jewelry." A few weeks later, on March 4, 2025, Macy's sent another email titled "Hours left! Score up to 70% off jewelry & watches NOW." Then, on March 14, 2025, and again on March 15, 2025, Macy's offered the same reduced pricing in emails with the subject line "Up to 70% off jewelry + earn faster with Star Money Bonus Days." Thus, within a span of roughly thirty days, customers had multiple opportunities to purchase jewelry at a 70% discount despite Macy's representing the offer as scarce or time-limited.

54. On April 15, 2025, Macy's sent an email titled "Flash Sale! 50% off dresses, suits & more," the body of which confirmed the sale was for "today only." But two days later, on April 17, 2025, Macy's sent an email with the subject line "Star Money Bonus Days + up to 50% off dresses, suits & more," making the same pricing available yet again. The following month, the same pricing was offered again in yet another purported flash sale, as communicated in a May 28, 2025, email titled "Flash Sale! 50% off men's suits, dresses & more."

55. On May 26, 2025, Macy's sent an email with the subject line "Up to 60% off! Last chance to save on summer styles." Such reductions, however, would be typical for the summer season. The same rate was offered again in a June 12, 2025, email titled "Up to 60% off what you

NEED for summer," and the spam continued the following day, June 13, 2025, with an email containing the subject line "Up to 60% off! See our TOP offers for summer."

56. On July 13, 2025, Macy's sent an email with a subject line signaling the end of deals on summer items: "Ends tonight! EPIC deals on summer styles." Yet, within five days, a July 18, 2025, email announced the beginning of a comparable sale: "Starts now! Up to 50% off summer styles."

57. The misleading summer-style campaign continued into August. On August 3, 2025, Macy's sent an email with the subject line "End-of-summer sale: up to 50% off ends tonight!," and later that same day transmitted another email with the subject line "Ends in hours! Our BEST deals of the summer." Despite the promise that the summer's best deals would end on August 3, Macy's advertised deeper discounts on summer styles a mere two days later, in an August 5, 2025, email with the subject line "Flash Sale: up to 60% off summer styles starts NOW." And within a week, an August 11, 2025, email confirmed even deeper reductions with the subject line "Clearance! Up to 70% off summer looks."

58. Macy's has also used its email campaigns to misrepresent the duration of certain sales. For example, on Friday, March 14, 2025, Macy's sent an email with the subject line "One Day Sale is on! Up to 60% off spring finds." But one needed only to open the message to confirm the falsity of its title: within the body of the email, a scrolling banner indicated that the sale was "now through Sunday." By any definition, a Friday deal that extended through Sunday was not a "One Day Sale."

59. Macy's has continued to deploy these tactics through late 2025 and into 2026. On November 4, 2025, Macy's sent an email with the subject line "Ends tonight! 30% off brands that RARELY go on sale," and another with the subject line "Ends in hours! Friends & Family is almost

over…"—yet a better discount (up to 70%) was announced the following day. And on April 19, 2026, Macy's sent an email with the subject line "Last day! Comforter sets starting at $29.99, plus more home deals," even though a superior promotion was announced just days later, on April 21, 2026.

60. These additional examples confirm that Macy's false time-scarcity representations are not accidental or ad hoc, but a deliberate and repeated marketing tactic. Discovery will show many more such emails, including additional emails Macy's sent to Named Plaintiff and members of the Class.

**D. Macy's sent the Subject Emails to Named Plaintiff and members of the Class knowing that Named Plaintiff and members of the Class were residents of Maryland.**

61. Macy's sent the Subject Emails to email addresses that Macy's knew, or had reason to know, were held by a Maryland resident, either because (i) Macy's had a physical address that was associated with Named Plaintiff and members of the Class based on past purchases and/or account information; (ii) Macy's had access to data regarding Named Plaintiff and members of the Class indicating which state they resided in; or (iii) information was available to Macy's upon request from the registrant of the internet domain name contained in Named Plaintiff and members of the Class's electronic mail addresses.

62. Macy's knows where many of its customers reside through several methods.

63. First, for any person that places an order online from Macy's, Macy's associates an email address with a shipping address and/or billing address for that order.

64. Second, Macy's encourages online shoppers to create online accounts and to enroll in its Star Rewards loyalty program. Customers save information in their Macy's accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers. Named

Plaintiff is an enrolled Macy's Star Rewards member, and the Subject Emails greeted her by name and displayed her loyalty status and points balance, confirming that Macy's maintains account information associating her email address with her identity and location.

65. Third, Macy's Privacy Policy indicates that it collects geolocation data, mailing addresses, state information, and IP addresses, and that it collects this information for marketing purposes, both directly from consumers when they interact with its site, create an account, make or review a purchase, or use a store locator, and passively when consumers visit or interact with its site or receive or interact with its communications.

66. Fourth, discovery will show that Macy's employs methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Macy's marketing emails, including by identifying their physical location. For example, discovery will show that Macy's gathers information such as geocoordinates and IP addresses from individuals who click on links in Macy's commercial emails, and that Macy's can use such information to determine whether the recipient is in Maryland. Among other technologies, Macy's uses Oracle to manage its email marketing campaigns, which, on its own or in combination with other data and analytics tools, gives Macy's detailed insight into the behavior and characteristics of its email audiences.

67. Fifth, Macy's also utilizes cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Macy's marketing emails and that visit its website, including the Meta Pixel and tracking technologies provided by Google, Inc. and others that may be able to locate consumers in Maryland.

68. Sixth, discovery will also show that Macy's employs sophisticated third parties who create profiles of customers and potential customers, including their email address and physical

location, such as commercial data brokers (e.g., Acxiom, Oracle, and Equifax) and "identity resolution" services (e.g., LiveRamp) that connect consumers' email addresses to their physical locations, among other identifiers.

69. Lastly, Macy's also knew, should have known, or had reason to know that it sends marketing emails to Maryland residents due to its large presence in the State, including the Macy's department stores it operates in Maryland, and the volume of marketing emails it sends to people around the country.

70. Discovery will show that, at the time it sent the Subject Emails, and other misleading emails that will be discovered during the course of this litigation, Macy's had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails.

71. Named Plaintiff has placed online orders from Macy's and has listed her shipping address as being in Maryland.

**E. Macy's initiated (or conspired to initiate) the transmission of the Subject Emails to Named Plaintiff and members of the Class.**

72. At all times relevant to this Complaint, Named Plaintiff resided in Maryland.

73. Named Plaintiff has received Macy's emails since at least December 2025.

74. Named Plaintiff receives emails from Macy's at a gmail.com email address.

75. Macy's knows, or has reason to know, that Named Plaintiff's email address is held by a Maryland resident. Named Plaintiff has made purchases from Macy's that have been delivered to her home in Maryland, and she is an enrolled Macy's Star Rewards member whose account is associated with a Maryland address.

76. Macy's sent the Subject Emails to Named Plaintiff for the purpose of promoting Macy's goods for sale.

77. Macy's initiated the transmission or conspired to initiate the transmission of the Subject Emails to Named Plaintiff.

78. Each of the Subject Emails had the capacity, tendency, or effect of deceiving the recipient, as described herein.

79. Named Plaintiff has identified 3 Subject Emails with false and/or misleading subject lines. Macy's is aware of all the emails it has sent Named Plaintiff and discovery will show the full number of emails Macy's has sent throughout the relevant time period.

## V. CLASS ACTION ALLEGATIONS

80. Named Plaintiff brings this action, both individually and as a class action, on behalf of similarly situated recipients of commercial electronic mail sent by Macy's and seeks to represent the following Class, defined as:

> All Maryland residents to whom Macy's sent, within three years before the date of the filing of this complaint until the date of trial, an email with a subject line that states or implies that a particular promotion, or a deadline to order for timely delivery or shipping, will end at a specified time, when the promotion or ordering opportunity actually continued beyond that specified end time.

Excluded from the Class are Defendants, as well as Defendants' affiliates, employees, officers and directors, and the Judge to whom this case is assigned.

81. The Class, as defined above, is identifiable. Named Plaintiff is a member of the Class.

82. The Class consists, at a minimum, of 50 consumers and is thus so numerous that joinder of all members is clearly impracticable.

83. There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual members of the Class.

84. With respect to the Class, the common and predominating questions include, but are not limited to:

a. Whether the emails Macy's sent to the Class are subject to MCEMA § 14-3001, *et seq.*;

b. Whether the subject lines of emails sent by Macy's contain materially false or misleading information that has the capacity, tendency, or effect of deceiving the recipient, in violation of MCEMA § 14-3002;

c. Whether Macy's is subject to the $500 penalty set forth in MCEMA § 14-3003 for each email it sends containing materially false or misleading information in the subject line; and

d. The nature and extent of Class-wide injury and damages.

85. Claims of Named Plaintiff are typical of the claims of the respective members of the proposed Class and are based on and arise out of similar facts constituting the wrongful conduct of Defendants.

86. Named Plaintiff will fairly and adequately protect the interests of the proposed Class.

87. Named Plaintiff is committed to vigorously litigating this matter.

88. Further, Named Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

89. Neither Named Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

90. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class.

91. A class action is the superior method for fair and efficient adjudication of the controversy.

92. The likelihood that individual members of the proposed Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

93. The likelihood that individual members of the proposed Class will prosecute separate actions is remote also because each individual claim involves a relatively small amount.

94. Counsel for Named Plaintiff and the proposed Class is experienced in class actions and foresees little difficulty in the management of this case as a class action.

## VI. CAUSE OF ACTION

### COUNT ONE
### (VIOLATION OF MARYLAND COMMERCIAL ELECTRONIC MAIL ACT § 14-3001, *ET SEQ.*)

95. Named Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further alleges:

96. Maryland Commercial Electronic Mail Act ("MCEMA") § 14-3001 defines "Commercial Electronic Mail" as "electronic mail that advertises real property, goods, or services for sale or lease."

97. The Subject Emails are "Commercial Electronic Mail," as the purpose of those emails was to advertise goods or services for sale.

98. MCEMA § 14-3002(b) contains the following prohibition related to Commercial Electronic Mail: "A person may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail [that] is sent

to an electronic mail address that the sender knows or should have known is held by a resident of the State[, which] [c]ontains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient."

99. Macy's is the person that initiated the transmission of the Subject Emails to Named Plaintiff and members of the Class.

100. MCEMA § 14-3002(c) contains the following presumption: "[a] person is presumed to know that the intended recipient of commercial electronic mail is a resident of the State if the information is available on request from the registrant of the Internet domain name contained in the recipient's electronic mail address."

101. Information concerning the residency of Named Plaintiff and members of the Class is (and was) available on request from the registrant of the Internet domain name contained in Named Plaintiff and members of the Class's electronic mail address.

102. Named Plaintiff and members of the Class have provided Macy's with a shipping address and/or billing address with respect to orders made by Named Plaintiff and members of the Class.

103. At the time it sent the Subject Emails, Macy's had access to the data described above regarding Named Plaintiff and members of the Class's geolocation, IP address, and residency.

104. Named Plaintiff and members of the Class are (and were), in fact, residents of Maryland at the time Macy's transmitted the Subject Emails.

105. Named Plaintiff and members of the Class were the intended recipients of the Subject Emails.

106. Macy's knew or should have known that Named Plaintiff and members of the Class, the intended recipients of the Subject Emails, are (and were) residents of the State of Maryland when Macy's sent the emails.

107. MCEMA § 14-3003(c) provides that "[a] person who violates this subtitle is liable for reasonable attorney's fees and for damages . . . [t]o the recipient of commercial electronic mail, in an amount equal to the greater of $500 or the recipient's actual damages[.]"

108. Under MCEMA, it is irrelevant that the Subject Emails were solicited.

109. In violation of MCEMA § 14-3002, the Subject Emails contained a subject line with materially false or misleading information, and had the capacity, tendency, or effect of deceiving the recipients in the ways and for the reasons described herein.

110. Each of the Subject Emails had the capacity of deceiving the recipient into believing that a sale was ending, or that the opportunity to order for timely delivery was ending, on the date or at the time specifically identified in the subject line, when in reality the sale or ordering opportunity was always planned to continue, and did continue, beyond that represented date or time.

111. Macy's sending of each Subject Email is a discrete violation of MCEMA § 14-3002.

## PRAYER FOR RELIEF

**WHEREFORE,** Named Plaintiff respectfully prays for judgment as follows:

A. An order assuming jurisdiction of this case;

B. an order certifying this case as a class action;

C. an order appointing Named Plaintiff as representative of the Class, and undersigned counsel as Class counsel for the Class;

D. an order awarding statutory damages pursuant to MCEMA § 14-3003 ($500 per violation) for Named Plaintiff and members of the Class;[1]

E. an award of attorneys' fees, pursuant to MCEMA § 14-3003;

F. an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and the members of the proposed Class; and

G. award such other relief as the court deems appropriate.

## VII. DEMAND FOR JURY TRIAL

Named Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**The Toppe Firm, LLC**

Dated: July 14, 2026

**/s/ Jeffrey C. Toppe**

Jeffrey C. Toppe, Esq. (CPF #1412180230)
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

*/s/ Daniel S. Tomascik* (CPF #241051161)
Daniel S. Tomascik
Tyler B. Ewigleben*
**JENNINGS & EARLEY PLLC**
500 President Clinton Avenue
Suite 110 Little Rock, AR 72201
Telephone: (501) 255-8569

[1]Named Plaintiff states that her individual claim for relief under MCEMA § 14-3003 totals at least $1,500 (3 emails x $500 per email = $1,500).

Email: dan@jefirm.com
tyler@jefirm.com

*Attorneys for Named Plaintiff*

**pro hac vice to be submitted*

**CERTIFICATION PURSUANT TO MARYLAND RULE 1-313**

I, Jeffrey C. Toppe, hereby certify that I am an attorney in good standing within the State of Maryland, and I have been licensed to practice law in the State of Maryland since December 18, 2014. My Client Protection Fund number is CPF #1412180230.

Respectfully submitted,

The Toppe Firm, LLC

Dated: July 14, 2026

**/s/ Jeffrey C. Toppe**
Jeffrey C. Toppe, Esq. (CPF #1412180230)
4900 O'Hear Avenue, Ste. 100
North Charleston, SC 29405
(323) 909-2011
jct@toppefirm.com

**Attorney for Named Plaintiff**

IN THE CIRCUIT COURT FOR Baltimore County (City/County)

# CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

## DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

***Defendant:*** You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT CASE NUMBER C-03-CV-26-003253 (Clerk to insert)

**CASE NAME:** Davia Edwards (Plaintiff) vs. Macys.com, LLC, et al. (Defendant)

PARTY'S NAME: Davia Edwards PHONE: ____

PARTY'S ADDRESS: 5514 Piedmont Avenue, Baltimore, MD 21207

PARTY'S E-MAIL: ____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Jeffrey C. Toppe PHONE: (323) 909-2011

PARTY'S ATTORNEY'S ADDRESS: 4900 O'Hear Avenue, Ste. 100, North Charleston, SC 29405

PARTY'S ATTORNEY'S E-MAIL: jct@toppefirm.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: ____

**ANTICIPATED LENGTH OF TRIAL?:** ____ hours 3 days

## PLEADING TYPE

**New Case:** ☒ Original ☐ Administrative Appeal ☐ Appeal

**Existing Case:** ☐ Post-Judgment ☐ Amendment

***If filing in an existing case,*** skip Case Category/ Subcategory section – go to Relief section.

## IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt: ____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☒ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud
- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance
- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☒ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive
- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Financial Exploitation
- ☐ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☒ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory
- ☐ Judgment-Default
- ☒ Judgment-Interest
- ☐ Judgment-Summary
- ☐ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment
- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☐ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000 ☐ $10,000 - $30,000 ☐ $30,000 - $100,000 ☒ Over $100,000

☐ Medical Bills $ ____________ ☐ Wage Loss $ ____________ ☐ Property Damages $ ____________

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation ☒ Yes ☐ No
B. Arbitration ☐ Yes ☒ No
C. Settlement Conference ☒ Yes ☐ No
D. Neutral Evaluation ☐ Yes ☒ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated* ***LENGTH OF TRIAL.***

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less
☐ 1 day of trial time
☐ 2 days of trial time
☐ 3 days of trial time
☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of Defendant's response
☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

## CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☒ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff________________. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☒ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

7/14/2026
Date

/s/ Jeffrey C. Toppe — 1412180230
Signature of Attorney / Party — Attorney Number

4900 O'Hear Avenue, Ste. 100
Address

Jeffrey C. Toppe
Printed Name

North Charleston — SC — 29405
City — State — Zip Code

AUG 20 2026



Reset